## LARIMER & WELD RESERVOIR COMPANY V. FORT COLLINS MILLING & ELEVATOR COMPANY ET AL.

1. PLEADINGS—*Motion For Judgment Upon*, admits all facts well pleaded. (245.)

2. PARTIES—*Irrigating Company—Right of Minority Stockholder.* A reservoir company holding a minority of the stock in an irrigation company sought to enjoin the officials of the water district from refusing it permission to take water from the stream, for storage, and from compelling the irrigation company to permit the water to pass down the stream to a certain mill, claiming that the right of the proprietors of the mill, though senior to that of the irrigating company, was not to be regarded, because never established by any valid decree. The appropriation of the irrigating company was for direct irrigation only. The purpose of plaintiff, was, not to apply the water to direct irrigation, but to store it for subsequent distribution from its reservoir to consumers. The complaint contained no allegation that plaintiff or any of its consumers owned land under the irrigation company's ditch, upon which water represented by plaintiff's holdings was used for direct irrigation, or that plaintiff was needing water for direct irrigation. *Held* that the irrigating company was an indispensable party, and no excuse for the omission to join it being shown, judgment for defendant on the pleadings was affirmed. (245, 246.)

3. INJUNCTION—*Senior and Junior Appropriators of Water.* The senior appropriator of water will not be enjoined, at the suit of the junior, from diverting the water to which his senior right is admitted. (247.)

4. —— *Senior Right Not Adjudicated.* Notwithstanding the provisions of sec. 22 of the Act of 1881 for the adjudication of priorities to the use of water (Rev. Stat. sec. 3317) one who has for many years enjoyed the waters of a stream for power, his senior right being admitted by the pleadings, and all the time recognized by the water officials of the district, will not, at the instance of a junior appropriator be restrained from exercising his right, nor will the water commissioner be enjoined from recognizing it, even though no valid decree declares it. (249.)

*Error to Larimer District Court.* Hon. ROBERT G. STRONG, Judge.

Mr. JUSTICE GARRIGUES delivered the opinion of the court.

This action was brought by The Larimer & Weld Reservoir Company as plaintiff, plaintiff in error, against the

Fort Collins Milling & Elevator Company, and the official water officers of the state. Its purpose is to compel the official defendants to police the Cache la Poudre river in the distribution of its waters, in accordance with the adjudication decrees for irrigation and storage purposes, and to prohibit them from recognizing the priority of appropriation of the power canal belonging to the milling company. The ground stated for asking such relief is not that plaintiff's reservoir appropriatioons are senior, but that the priority on the river, of the power canal, has not been settled by statutory adjudication, and it is claimed that the official defendants should, under our irrigation statutes, refrain from recognizing it in the distribution of water until such a decree is obtained.

In the official classification for the distribution of water of the natural streams of the state, the Cache la Poudre river and its tributaries constitute water district No. 3. The power canal of defendant company, was originally constructed in 1867 with its headgate located about a mile above the city of Fort Collins, its purpose being to furnish power for the operation of a flouring mill located in that city. Plaintiff owns a large storage reservoir from which water is drawn into the Eaton canal, and distributed to its stockholders for irrigation. In a general statutory adjudication decree settling the priority of appropriation of ditches on the river diverting water for direct irrigation, entered at Fort Collins in February, 1882, the irrigating ditch of the Cache la Poudre Irrigation Company, the river headgate of which is located about five miles above the headgate of the power canal, was awarded two appropriations for irrigation, the first dating May 1, 1869, and the other May 1, 1873. In the same proceeding the power canal was decreed an appropriation of 93 cubic feet per second with priority dating April 15, 1867, for power purposes. The only change in any of these decrees was in a subsequent proceeding in

which the volume of the power appropriation was reduced to 60 feet. In 1909 a general statutory adjudication decree settling the priority of appropriation of reservoirs on the river, for storage purposes, was entered at Fort Collins. In this proceeding plaintiff's reservoir was awarded two appropriations, the first dating in 1890, the other in 1895. It will be noticed that water to supply the power canal must pass the headgate of the irrigation company's ditch, which is plaintiff's intake to its reservoir.

The complaint alleges: That plaintiff owns 13 of 30 shares of the capital stock of the irrigation corporation, a mutual ditch company; that the milling company owns the power canal, used exclusively for power purposes, but that its priority has never been settled by decree; that the official defendants refuse to allow plaintiff to divert from the river the reservoir appropriations until the power canal has been supplied with 60 cubic feet per second, which deprives plaintiff of water for filling its reservoir; that at the time of filing the complaint, March 8, 1912, its reservoir was empty, and required these appropriations for filling; that water would be available for storage were it not for the fact that the mill company claims the water, and asserts a priority of right to have it carried through the power canal, which claim the water officials recognize, thereby casting a cloud upon plaintiff's decreed storage rights; that such acts have caused plaintiff great and irreparable injury and damage and unless enjoined will deprive it of its decreed storage appropriations. The relief asked, is that the official defendants be enjoined from refusing to allow plaintiff to take the water for storage, and from ordering and compelling it to pass down the river for the power canal; that the milling company be enjoined from claiming and taking the water; that plaintiff's right and title thereto for storage be confirmed and settled as against any claim of the milling company for power purposes; that the cloud cast upon plain-

tiff's storage appropriations be removed and its title to the water quieted.

The answer of the milling company alleges that its mill is operated by power furnished by the power canal, constructed about April 15, 1867; that at the general adjudication for irrigation in 1882 this canal was decreed priority No. 22 of date April 15, 1867, for 93 cubic feet per second for power purposes, which was subsequently reduced by decree to 60 feet; that plaintiff's reservoir appropriations are junior and inferior, both in date and time of diversion, to the priority of the mill power canal.

The replication admits the power canal was constructed in 1867, but alleges that it would not carry more than 30 feet until 1878, when it was enlarged to carry 60 feet to meet the enlarged capacity of the mill. It does not deny that the power canal decree was entered, as alleged, in the adjudication of 1882, or that its priority is senior to plaintiff's storage appropriations; but alleges the court in that proceeding was restricted to the determination of irrigation priorities and appropriations, and had no jurisdiction to enter a decree for power purposes; that for this reason the decree pleaded in the answer is void; it admits the purpose of the action is to compel the official defendants to refrain from recognizing the power canal, or its rights to any diversion until it shall obtain a decree under the act of 1903 settling its priority for power purposes.

Defendant moved the court for judgment of dismissal on the pleadings, which was sustained, and plaintiff brings the case here on error.

Mr. L. R. RHODES, Mr. N. C. FARNWORTH, for plaintiff in error.

Messrs. ALLEN & WEBSTER, Mr. FRED W. STOW, for defendants in error.

GARRIGUES, J., after stating the facts as above.

1.   A motion by a defendant for judgment on the pleadings, where a complaint, answer, and replication are filed, admits the truth of all material allegations well pleaded. Where an issue tendered by the answer is admitted by the replication, the court in order to sustain defendant's motion for judgment on the pleadings, must find (even if the replication could be established), the law requires that the motion be sustained.  The question presented then, is:  Admitting its pleadings to be true, can plaintiff maintain the action, and is it entitled to the equitable relief prayed, or any relief?  If not, the court was right in sustaining the motion, and the judgment should be affirmed.

2.   An analysis of the pleadings, oral arguments and briefs naturally suggests two questions:  First, what standing in this suit has the reservoir company in its capacity as a stockholder in the Cache la Poudre Irrigation Company? Second, what standing has it as owner of the reservoir appropriations, relative to maintaining an equitable action against the milling company?

3.   The Cache la Poudre Irrigation Ditch Company has two decreed appropriations for direct irrigation, dating May 1, 1869, and May 1, 1873.  By constructing a lateral in 1895 from this ditch to the reservoir, the ditch has since been used by the reservoir company as an intake, to fill the reservoir when water was available from the river for storage.  While the pleadings allege the reservoir company owns 13 of 30 shares of the Cache la Poudre Irrigation Ditch Company's stock, there can be little doubt the action relates to the storage rights decreed the reservoir and the standing of plaintiff based upon these rights.  Notwithstanding, we will first dispose of the question of plaintiff's right, as a minority stockholder in the Irrigation Ditch Company, to bring and maintain this action against the milling company. The decree settled the priority of the ditch owned by the Irrigation Ditch Company, in which plaintiff is a minority stockholder, and the appropriation is for direct irrigation.

The object of plaintiff is to store water, which is afterwards distributed to its consumers for irrigation. There is no allegation that plaintiff or any of its consumers own land under the irrigation company's ditch, upon which any water represented by the 13 shares of ditch stock is used for direct irrigation. Plaintiff is not maintaining this action because the water is needed by it for direct irrigation, to preserve the crops of its stockholder consumers. If in fact the reservoir company, as a stockholder, is a consumer of water from the irrigation company's ditch for direct irrigation, as distinguished from storage, there is no allegation that it needs the water for that purpose, or that it has not at all times received all the water to which it was entitled upon its stock; neither is there any allegation that there is not ample water in the stream at all times during the irrigating season to supply both the irrigation ditch company's ditch for direct irrigation, and the power canal for power purposes. This branch of the case is not brought by a stockholder to protect a water right in a ditch owned by one whose crops under the ditch are perishing; but is an attempt by a minority stockholder in a mutual ditch company to quiet the title to a ditch's decreed appropriation, and to obtain injunctive relief, upon the ground that the ditch's priority is being clouded, and the suit is necessary to protect its appropriation. In such an action the company owning the ditch is an indispensable party. *Peck v. Peck,* 33 Colo. 421, 80 Pac. 1063. If there were reasons why the ditch company would not or could not bring the action as plaintiff, it should have been made the defendant. It would be an anomalous procedure to permit the reservoir company to establish the seniority of the irrigation ditch company's ditch for irrigation, against the milling company's canal for power, in an action to which the irrigation company was not a party. So we will hold that the reservoir company has no standing in this action, based merely upon its ownership of stock in

the Cache la Poudre Irrigation Ditch Company, and pass to the next question.

4. What standing under the reservoir appropriations has plaintiff in an action to quiet title and for injunction against the power canal? There is no controversy over the facts. The complaint recites that plaintiff's reservoir appropriations acquired by original construction and enlargement, are dated respectively 1890 and 1895 and are evidenced by a decree entered in 1909. The answer pleads the diversion and beneficial application of water for power purposes, through the power canal, by which the mill has been operated since 1867, which right was evidenced by the irrigation decree of 1882. The replication denies the legality or validity of this decree, but admits a diversion of 30 feet as early as 1867 by the power canal, which it says was increased to 60 feet in 1878. This is a recognition that the power canal has diverted and used 60 feet for power purposes at least twelve years prior to the diversion of plaintiff's first reservoir appropriation. A senior appropriator will not be enjoined in a court of equity by a junior, from diverting water to which it is admitted the senior is lawfully entitled by priority of appropriation. A junior will not be decreed to have the senior right. A senior right cannot be established in plaintiff, as long as the pleadings admit that the mill diversion for power purposes is senior to the reservoir appropriations. It is said plaintiff is not attacking the seniority of the power right, but is simply asking that the official defendants be restrained from recognizing it, and that the milling company be enjoined from diverting the appropriation until the priority of the canal is settled by an adjudication decree. Section 22 of the irrigation act of 1881 provides that until a decree has been obtained in an adjudication as provided by the act, no claim of priority shall be recognized by the water commissioner in distributing water in times of scarcity. Admitting for

the purpose of the argument, but not deciding, that the court in the general irrigation adjudication of 1882 was without jurisdiction to enter a decree for power purposes, still we do not think the defendant company should be enjoined from using, or the official defendants restrained in this action from recognizing the right, merely because it is not evidenced by a decree, or because the decree is void. If the irrigation acts of '79 and '81 are restricted to irrigation, it does not follow the vested right acquired for power in 1867 could not be recognized by the official defendants until evidenced by a decree. It cannot be said that one diverting and using water for a long period, acquired no vested right because the beneficial use was for power instead of irrigation, for which no decree could be entered under the irrigation acts, nor prior to the act of 1903. If it is true these irrigation acts do not include appropriations for other than irrigation purposes, it cannot be urged that they curtail the exercise of the right for power, merely because it is not evidenced by a decree. But it is said an act was passed in 1903 (S. L. 1903, p. 297) by which the power canal can obtain a decree, and it has not done so. If no decree for the power canal could be obtained under the irrigation acts, then from their passage down to the act of 1903, the water commissioner would not be justified in interfering with the vested power right, merely because it was not evidenced by a decree. By the act of 1903 the power canal might obtain an adjudication decree for power purposes; but it does not follow that the vested right of the canal acquired in 1867 could not be used until it obtained such a decree. The act imposes no such condition, and does not require a refusal to recognize the right on the part of the water commissioner. There is no need in this case of discussing the method of enforcing the recognition of such a right, in the absence of a decree, if it should be denied or not recognized. As long as the commissioner did recognize it, he could not be enjoined from so doing, merely because the power canal had no

decree, when it was admitted the right was senior to the storage right. *The New Cache la Poudre Irrigation Co. v. Arthur Irrigation Co.*, 37 Colo. 530, is cited as authority that the commissioner can be so enjoined. The case is not in point. There the river commissioner refused to deliver water through a newly located headgate, and it was held he could not be compelled to do so until a decree was obtained as required by statute, changing the point of diversion. Here the water commissioner has always recognized the right, and permitted a diversion of water for power at the point of diversion where the right ripened. The right vested in 1867, since which time there has been no change in the point of diversion, application or use, and the river commissioner cannot be enjoined from recognizing the right by a reservoir company having a junior priority, merely because the mill power diversion is not evidenced by a decree under the act of 1903.

The judgment of the lower court is affirmed.

*Affirmed.*

Decision *en banc.*

SCOTT, J., concurs in the judgment of affirmance, but for the reason only that the complaint does not sufficiently state grounds for equitable relief.