**UNITED STATES of America, Appellant,**

v.

**Orlyn BELL, Water Division No. 5 Engineer; City and County of Denver; Public Service Company of Colorado; Colorado River Water Conservation District; John B. Scudder; Allen B. Phillips; Richard B. Farner; Frank Benton Land and Livestock Company; Southeastern Colorado Water Conservancy District; Twin Lakes Reservoir and Canal Company; Grand County Water & Sanitation District No. 1; City of Aspen; Mobil Oil Corporation; Water Supply & Storage Company; Joseph T. Zoline; Koppers Company, Inc.; Union Oil Company of California; Northern Colorado Water Conservancy District and Municipal Subdistrict; Frederick R. and Mary Benson Booth; Jack A. Oleson; and Exxon Corporation, Appellees.**

**No. 84SA290.**

Supreme Court of Colorado, En Banc.

Aug. 25, 1986.

Thomas H. Pacheco, Robert R. Klarquist, Edward J. Shawaker, Land and Natural Resources Div. U.S. Dept. of Justice, Washington, D.C., John R. Hill, Jr., U.S. Dept. of Justice, Denver, F. Henry Habicht, Asst. Atty. Gen., Washington, D.C., for U.S. of America.

John U. Carlson, Law Office of John Carlson, Denver, for Twin Lakes Reservoir and Canal Co.

Glenn E. Porzak, Holme Roberts & Owen, Boulder, for Exxon Corp.

Duane Woodard, Colorado Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Paula C. Phillips, First Asst. Atty. Gen., Carol D. Angel, Asst. Atty. Gen., Denver, for the State of Colo. and Orlyn Bell, Div. Engineer, Water Div. No. 5.

Wayne D. Williams, Michael L. Walker, and Glenn G. Saunders, Jack F. Ross, Saunders, Snyder, Ross & Dickson, P.C., Denver, for the City and County of Denver acting by and through its Board of Water Com'rs.

John D. Musick, Robert C. Kerr, Robert Wigington, Musick & Cope, Boulder, for the City of Aspen.

Kenneth Balcomb, Delaney & Balcomb, P.C., Glenwood Springs, for John B. Scudder, Allen B. Phillips, Richard B. Farner, Frank Benton Land & Livestock Co., Mobil Oil Corp., Joseph T. Zoline, Koppers Co., Inc., Frederick R. and Mary Benson Booth, Jack A. Oleson, and Exxon Corp.

Ward H. Fischer, Fischer, Brown, Huddleson & Gunn, Fort Collins, for Water Supply and Storage Co.

Howard Holme, Kevin B. Pratt, Fairfield & Woods, Denver, for Southeastern Colorado Water Conservancy Dist.

Stanley W. Cazier, Baker, Cazier & McGowan, Granby, for Grand County Water and Sanitation Dist. No. 1.

Timothy J. Flanagan, Kelly, Stansfield & O'Donnell, Denver, for Public Service Co. of Colorado.

John M. Sayre, Robert V. Trout, Davis, Graham & Stubbs, Denver, for Northern Colorado Water Conservancy Dist. and Municipal Subdistrict, Northern Colorado Water Conservancy Dist.

Donald H. Hamburg, Glenwood Springs, for Colorado River Water Conservation Dist.

Charles N. Woodruff, James R. Montgomery, Moses, Wittemyer, Harrison and Woodruff, P.C., Boulder, for Union Oil Co. of California.

DUBOFSKY, Justice.

The United States of America appeals an order of the district court for Water Division No. 5 (water court), denying relation back of an amendment seeking reserved water rights from the Colorado River mainstem to the federal government's original application for reserved water rights in or on federal oil shale land.[1] The water court ruled that the amendment to the original application did not relate back to the time

---

1. This court has direct appellate jurisdiction of water court adjudications. *See* Colo. Const. art. VI, § 2(2); § 13–4–102(1)(d), 6 C.R.S. (1973); C.A.R. 1(a)(2).

of filing because the United States had not fulfilled the notice requirements of C.R. C.P. 15(c). The court's order denied the United States' amended claim an antedated priority based on the land's reservation date and entered final judgment under C.R. C.P. 54(b) on the denial of relation back. We affirm the judgment of the water court.

## I.

On December 31, 1971, the United States filed with the water court a statement of claim seeking confirmation of its right to the use of water on lands owned by the United States within Water Division No. 5. The United States claimed federal reserved water rights for numerous reserved federal lands, including Naval Oil Shale Reserves numbers 1 and 3 (NOSR–1 and NOSR–3) in the Colorado River and White River drainages in Garfield and Rio Blanco counties. NOSR–1 was reserved for the exclusive use of the United States by presidential order in 1916; NOSR–3 was reserved in 1924. The United States claimed a priority date[2] of 1916 for NOSR–1 and 1924 for NOSR–3.[3]

The United States' 1971 application described the source of its claims for NOSR–1 and NOSR–3 as "[t]hose portions of the Colorado and White Rivers and wa-ter tributary thereto, which are located in or on the lands described [in NOSR–1 and NOSR–3], which are situated within Water Division No. 5." In January 1972 the water clerk published and distributed a resume describing the claimed rights' sources as required by the notice provision in section 37–92–302(3), 15 C.R.S. (1973). No portion of the mainstem of the Colorado River lies "in or on" NOSR–1 or NOSR–3. NOSR–3 is approximately one-half mile from the Colorado River mainstem. In addition, no portion of the White River mainstem lies "in or on" NOSR–1 or NOSR–3, and the record does not reveal its distance from either NOSR–1 or NOSR–3.

Various parties to the water court proceedings filed objections[4] to the NOSR application, and the court referred the United States' reserved water claims to a Master-Referee. At a pretrial conference on January 31, 1974, the Master-Referee delayed consideration of the reserved rights associated with the NOSRs. The United States presented no evidence concerning these claims, and the Master-Referee declined to rule on them in his order on August 6, 1976.

On January 31, 1983, more than eleven years after filing its original application, the United States filed a motion for leave to file an amended application and to pub-

---

2. The United States claimed that the dates the land was reserved should establish priority for purposes of administration of the reserved water rights and that the postponement doctrine of section 37–92–306, 15 C.R.S. (1973), should not apply. As explained within, although a water right has a nominal priority based on the date of initiation of the appropriation, under the postponement doctrine no water right has priority over water rights awarded on applications filed in a previous calendar year under the Water Right Determination and Administration Act of 1969, §§ 37–92–101 through –602, 15 C.R.S. (1973 & 1985 Supp.), or on applications filed in an earlier adjudication under prior law. *See infra* note 15; § 37–92–306. In this opinion, we use "priority date" to describe the effective date of priority for the purpose of administration and not the date of initiation of the appropriation.

3. When the federal government withdrew its land from the public domain and reserved it for a federal purpose, the government, by implication, reserved appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation. *Cappaert v. United States,* 426 U.S. 128, 138, 96 S.Ct. 2062, 2069, 48 L.Ed.2d 523 (1976); *United States v. City and County of Denver,* 656 P.2d 1, 17 (Colo.1983).

4. Sixty-six individuals, governmental entities, companies, corporations, and joint ventures filed statements of opposition to the United States' claims. Representatives of the following objectors made an appearance at the hearing on September 20, 1983, at which the water court considered the United States' motion to amend its application: City and County of Denver, Union Oil, City of Colorado Springs, Twin Lakes Reservoir and Canal Company, City of Aspen, Northern Colorado Water Conservancy District, Mobil Oil, Ute Water Conservancy District, Middle Park Water and Land Company and Water/Sanitation District, High Country Properties, and Public Service Company of Colorado.

lish a new description of its claims. In its amended claim, for which the United States claims priority dates of 1916 and 1924, the United States asserts that it should be allowed to divert 100 cubic feet per second of water [5] from the mainstem of the Colorado River at the Anvil Points Diversion, a diversion point not "in or on" NOSR–1 or NOSR–3.

On October 11, 1983, the water court granted the United States' motion to amend but denied the amendment's relation back to the 1971 application because of insufficient notice that the United States was claiming reserved rights in water from the Colorado River mainstem to parties with water rights that would be affected by the amendment. On March 22, 1984, in response to a motion filed by the City and County of Denver (Denver), the water court entered final judgment under C.R.C.P. 54(b) denying the United States' claim for an antedated water right [6] for water from the mainstem of the Colorado River to be used in the development of oil shale. The order allowed the United States to pursue the claims raised in the original application to water "in or on" NOSR–1 and NOSR–3 and the claim under the amended application for water rights from the mainstem of the Colorado River to be used in the development of oil shale based on a 1983 priority date. The United States appeals the order of the district court, asserting that use of the Colorado postponement doctrine to limit the United States' reserved water rights violates federal law, that a final judgment denying the United States' claim for Colorado mainstem rights with a reservation priority date is improper, and that the amended application should have related back to the priority date in the original claim, the dates that the NOSRs were reserved.

We determine that the water court correctly applied C.R.C.P. 15 in granting the United States' motion to amend and in denying the amendment's relation back to the date of the original application. We also agree with the water court that the United States may not assert a claim to mainstem Colorado River water for the NOSRs with a priority date based on the date of reservation of the NOSRs. The water court's denial of relation back to the original application and denial of a priority date based on the NOSRs' date of reservation had the effect of dismissing parties from the suit; therefore, the judgment was final under C.R.C.P. 54(b).

## II.

### A.

■ Because a water adjudication is a special statutory proceeding, we first consider the objectors' argument that C.R.C.P. 15 does not apply to special statutory proceedings and that therefore the United States' mainstem claim should be treated as a new claim, not as an amendment to the original claim. C.R.C.P. 81(a) provides that the rules of civil procedure "do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute." Proceedings under the Water Right Determination and Administration Act of 1969 (the Act), §§ 37–92–101 through –602, 15 C.R.S. (1973 & 1985 Supp.), are special statutory proceedings under C.R.C.P. 81(a). *Gardner v. State*, 200 Colo. 221, 614 P.2d 357 (1980); *Colorado River Water Conservation District v. Rocky Mountain Power Co.*, 174 Colo. 309, 486 P.2d 438 (1971), *cert. denied*, 405 U.S. 996, 92 S.Ct. 1245, 31 L.Ed.2d 465 (1972). Therefore, C.R.C.P. 15 applies to water court proceedings under the Act only to the extent that the rule is

---

5. One hundred cubic feet per second is 72,270 acre-feet per year. *See* C. Meyers & D. Tarlock, *Water Resource Management: A Casebook in Law & Public Policy* 39 (1980). One acre-foot is the amount of water necessary to cover one acre of land with water one foot deep.

6. "Antedation" is a term used to describe the award of a priority date earlier than the doctrine of postponement would otherwise permit. *See infra* note 15; § 37–92–306, 15 C.R.S. (1973).

not inconsistent or in conflict with procedures under the Act.

C.R.C.P. 15(a) provides that after a responsive pleading is filed, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." C.R.C.P. 15(c), which governs the relation back of amendments, provides as follows:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment: (1) Has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The resume notice provision of the Act, § 37–92–302(3), 15 C.R.S. (1973 & 1985 Supp.), requires the water clerk to prepare a resume of all applications in the water division filed during the preceding month, to publish the resume in newspapers of general circulation, and to mail a copy of the resume to persons who will be affected or to those who have requested resumes.

C.R.C.P. 15 is not inconsistent or in conflict with the resume notice requirement of the Act in this case. A published resume is notice of a claim for a water right. *Pueblo West Metropolitan District v. Southeastern Colorado Water Conservancy District*, 689 P.2d 594 (Colo.1984); *Stonewall Estates v. CF & I Steel Corp.*, 197 Colo. 255, 592 P.2d 1318 (1979). Publication of a

resume is a special statutory procedure in the Act that must be followed. *See Oxley v. Colorado River Water Conservation District*, 182 Colo. 206, 513 P.2d 1062 (1973). However, the resume notice requirements of the Act do not prohibit an amendment of an application for a water right "when justice so requires," and courts have allowed applicants for water rights to amend applications in the past. *See Bunger v. Uncompahgre Valley Water Users Association*, 192 Colo. 159, 163, 557 P.2d 389, 391 (1976).

One objector asserts that C.R.C.P. 15 was inconsistent or in conflict with the Act at the time the United States filed its original claim because prior to 1977, section 37–92–302(3)(b), 15 C.R.S. (1985 Supp.),[7] which now requires that applicants pay the cost of republishing a water resume if the application is republished as a result of an applicant's amendments, was silent concerning amendments. The objector suggests that we interpret this silence as prohibiting amendments of substance to claims that were filed before July 1, 1977. *Abts v. Board of Education*, 622 P.2d 518, 525 (Colo.1981) (where the election contest statutes provide a complete system of procedure but do not provide for amendments, no amendments of substance are allowed). Section 37–92–302(3)(b) concerns only the cost of republication, however, and its acknowledgement that an applicant may make amendments does not concern when amendments are allowed or whether they relate back to the original application. Unlike the situation in *Abts*, in which there was a strong interest in immediate resolution of an election dispute and therefore a reason not to allow amendments under C.R.C.P. 15 when the election contest statute did not provide for amendments, there is no need for immediate resolution here.

The objector also asserts that the General Assembly's addition in 1981 of section 37–92–306.1, 15 C.R.S. (1985 Supp.),[8] which

7. Ch. 483, sec. 2, 1977 Colo. Sess. Laws 1702, 1703.

8. Section 37–92–306.1 provides as follows:

> (1) Except in the case of applications for adjudication of groundwater, notwithstanding the provisions of section 37–92–306, the filing date of an application for a water right or

allows relation back of an amendment to an earlier application if the second application concerns the same source and same point of diversion, indicates that prior to 1981 the legislature did not intend the Act to allow amendments with relation back. The 1981 amendment concerning relation back addresses applications by different applicants for a water right or conditional water right involving the same source of water and derived from the same point of diversion, not relation back of an amendment by an applicant to his own prior application. Legislative silence may mean many things. *Cf. United States Transmission Systems, Inc. v. Board of Assessment Appeals,* 715 P.2d 1249 (Colo.1986) (failure of legislature to pass a particular amendment defining "telephone corporation" to include United States Transmission Systems, Inc., does not mean legislature did not consider the company to be included within the usual and ordinary meaning of "telephone company"). In the absence of any indication other than legislative silence that the Act prohibits amendments or relation back, and in the absence of conflict between C.R.C.P. 15 and section 37–92–302(3) in this case, C.R.C.P. 15 applies.

### B.

■ The next question is whether the water court properly applied C.R.C.P. 15 in allowing the amendment. C.R.C.P. 15(a) provides that after a responsive pleading is filed, pleadings may be amended by a party only by consent of the adverse party or by leave of court but that such "leave shall be freely given when justice so requires." The decision to grant an amendment is within the trial court's discretion. *See Varner v. District Court,* 618 P.2d 1388 (Colo.1980). We have interpreted C.R.C.P. 15(a) liberally in allowing amendments. *See Eagle River Mobile Home Park v.*

*District Court,* 647 P.2d 660 (Colo.1982). Because the United States has requested republication of the resume, the water court did not abuse its discretion in allowing the amendment in conjunction with denying the relation back of the amendment.[9]

### C.

■ The United States argues that, having allowed the amendment, the water court erroneously denied the amendment's relation back to the original application. C.R.C.P. 15(c) provides that in order to relate back to the original pleading, the claim asserted in the amendment must arise out of the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." If the claim in the amendment is asserted against a new party, the amendment will not relate back unless the party brought in by the amendment "(1) [h]as received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

The United States maintains that it has met one of the requirements of C.R.C.P. 15(c) because the amendment arises out of the same conduct, transaction, or occurrence as the original application because both the original application and the amended application arise out of an attempt by the United States to reserve water to fulfill the purposes of the NOSRs. In the context of resolving the issues before us, we shall assume that the claim to waters from the Colorado River mainstem arises out of the conduct, transaction, or occurrence set forth in the original claim because both claims relate to the reserva-

conditional water right involving the same source of water and derived from the same point of diversion from the same stream as a prior application for a water right or conditional water right filed in the preceding year by a different applicant may relate back to the date of filing of that prior application if:

(a) The subsequent applicant timely filed a statement of opposition to the prior application; and

(b) The subsequent application was made within sixty days of the prior application.

9. The effect of the ruling is that the court treats the amendment as a new claim.

tion of water for oil shale development on the NOSRs.

With respect to the other relevant requirements of C.R.C.P. 15(c), the United States asserts that the amended application does not involve any new parties, but assuming that it does involve new parties, that the original application provided ample notice that the United States was claiming water from the Colorado River mainstem and by other means the United States provided actual notice to any new parties. The United States suggests that this court adopt two commentators' liberal view of notice in interpreting C.R.C.P. 15(c):

> It has been suggested that the requisite notice must be given by the content of the original pleadings. Other cases have taken a broader view and have held that it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from sources other than the pleadings, a position that seems sound since it is unwise to place undue emphasis on the particular way in which notice is received. An approach that better reflects the liberal policy of Rule 15(c) is to determine whether the adverse party, viewed as a reasonably prudent man, ought to have been able to anticipate or should have expected that the character of the original pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question.

6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1497, at 498–99 (1971) (footnotes omitted).[10]

If the 1983 amendment relates back to 1971 and the application is granted, the priorities of the holders of 4400 individual water rights adjudicated based on claims filed between 1971 and 1983 will be affected.[11] Moreover, if the result of relation back is to entitle the United States to priority dates based on the dates of reservation of NOSR–1 and NOSR–3, all other water rights with priority dates as early as 1916 would be affected. It would be possible in many cases to say that, once notified by republication of the resume, a party brought in by the relation back of an amendment to a water right application then has an opportunity to object to the application. The problem in this case is that, but for the relation back of the amendment, these nonparties would not have to object at all. Some of them might not have made the effort to obtain adjudicated rights if they had known the United States was claiming reserved rights to water from the Colorado River mainstem.

Wright and Miller would allow relation back if the holders of the 4400 water rights, viewed as reasonably prudent persons, should have known from the 1971 resume notice that the United States was claiming water from the Colorado River mainstem. The original application noted that the source of the water was "[t]hose portions of the Colorado and White Rivers and water tributary thereto, which are located in or on [the NOSRs]." The notice provided in the resume based on the original claim again identified the source of the water as "those portions of the Colorado and White Rivers and water tributary thereto located on [the NOSRs]." The United States asserts that the holders of the 4400 water rights should have known about the claim to mainstem Colorado River water because the original claim and the resume mentioned the Colorado and White

---

10. In *Denver & Rio Grande Western Railroad Co. v. Clint,* 235 F.2d 445 (10th Cir.1956), the court noted that C.R.C.P. 15(c) was identical to Fed.R.Civ.P. 15(c). Since *Denver & Rio Grande Western Railroad Co.,* both C.R.C.P. 15(c) and Fed.R.Civ.P. 15(c) have been amended. *See* C.R.C.P. 15(c); Fed.R.Civ.P. 15(c) advisory committee note, 1966 amendment. The wording in each rule is again identical. Therefore, we consider case law interpreting the federal rule in analyzing the Colorado rule.

11. As part of the record on appeal, several objectors submitted the official July 1, 1984, water rights tabulation for Water Division No. 5, listing more than 4,400 individual water rights decreed on applications filed between January 1972 and December 1982, rights involving small domestic, farm, industrial, and municipal uses.

rivers and the original claim stated that the United States anticipated the need for 200,000 acre-feet of water annually. The United States argues that it was obvious that, because only 11,804 acre-feet of water was estimated to be available annually in or on the NOSRs, a claim for 200,000 acre-feet had to be obtained from the mainstem of the Colorado River.

We determine, however, that because no portion of the Colorado and White rivers lie on the NOSRs, a reasonable person would have interpreted the reference to the source as water tributary to the Colorado and White rivers, not to the mainstem of the Colorado River. Moreover, the original claim noted only that the United States anticipated the need for 200,000 acre-feet of water. According to the United States, the resume notice of a need for 200,000 acre-feet annually was for informational purposes only. The United States made an unambiguous claim to the water located on, not off, the reserved land; the fact that the United States claimed that it needed more water than was on the land is not notice that additional water would be withdrawn from the mainstem of the Colorado River when the additional water needed could be purchased from other users.

The United States cites a number of cases, asserting that they require the water court to allow their amendment relation back. These cases are not dispositive because they either allow the relation back for some technical change, *People v. District Court*, 200 Colo. 65, 612 P.2d 87 (1980) (change in citation from C.R.C.P. 106(a)(4) to section 24-4-106, 10 C.R.S. (1982), relates back); involve assertion of new theories of recovery against the same parties, *Continental Sales Corp. v. Stookesberry*, 170 Colo. 16, 459 P.2d 566 (1969) (relation back of amendment of complaint during trial to allow injured party to try the case on a "loaned employee" theory does not prejudice "borrower" employer because the complaint gave notice of the circumstances and occurrence which caused the injury); *Varner*, 618 P.2d 1388 (new claims for breach of contract, conversion, breach of warranty, and outrageous con-

duct allowed to relate back to claim against auto dealer where original complaint was poorly drafted and unclear); concern new parties with an identity of interest with all the prior parties, *Spiker v. Hoogeboom*, 628 P.2d 177 (Colo.App.1981) (individual partner substituted for corporate entity); or involve different plaintiffs or adding the name of a plaintiff. *Travelers Insurance Co. v. Gasper*, 630 P.2d 97 (Colo.App.1981) (relation back allowed where insurer substitutes as plaintiff for injured party); *Van Schaack v. Phipps*, 38 Colo.App. 140, 558 P.2d 581 (1976) (amendment with relation back allowed to list name of administratrix who had been substituted for plaintiff).

The United States also asserts, citing *Spiker*, 628 P.2d 177, that the amendment should relate back to the date of the original pleading because the opposing parties had actual notice of the amended claim. The United States maintains that opposing parties received actual notice of the United States' claim to the mainstem of the Colorado River through the following sources: (1) the 1971 application's reference to the Colorado River as a source of the claimed water; (2) the 1971 application's claim of 200,000 annual acre-feet of water when it was obvious that such a considerable quantity of water would not be available within the reserved land; (3) the existence of a pipeline from the Colorado River to the demonstration plant on NOSR-3; (4) indications during discovery and pretrial process that the United States was claiming mainstem Colorado River water; (5) reference to the United States' mainstem claim in *United States v. City and County of Denver*, 656 P.2d 1, 35 (Colo.1982), and in legal publications; (6) reference to the United States' claim to Colorado River rights in the application for assignment of the NOSR claims to a water judge and in this court's subsequent order making that assignment; and (7) stipulations referring to such claims inserted into water right decrees.

The United States' unambiguous claims to waters in or on the NOSRs did not provide actual notice of a mainstem claim

to nonparties to whom adjudicated water rights were awarded between 1971 and 1983. Diverting water from the Colorado River to the demonstration plant on NOSR–3, indications during discovery and pretrial process of this case, references to the claim in opinions and legal publications, assignment of this case to a water judge, and stipulations between the United States and some applicants for appropriative rights do not constitute actual notice to nonparties. The claim to 200,000 annual acre-feet was noted only as an informational anticipated need. The existing pipeline from the Colorado River to the demonstration plant on NOSR–3 carried privately owned water and was not notice that the United States was asserting its own claim to water from the mainstem of the Colorado River. Although the United States indicated during discovery that it claimed water from the mainstem of the Colorado River, its answer during discovery does not provide actual notice to nonparties. This court and several commentators noted that the United States was claiming water from the Colorado mainstem for the NOSRs, *see United States v. City and County of Denver*, 656 P.2d at 35; Laitos, *The Effect of Water Law on the Development of Oil Shale*, 58 Den.L.J. 750, 774–76 (1981); Trelease, *Federal Reserved Water Rights Since PLLRC*, 54 Den.L.J. 473, 490–91 (1977),[12] but these statements do not mean that nonparties to the adjudication received actual notice. The fact that one objector asked this court to assign the United States' potentially large claim to water from the Colorado River to the water court and the fact that this court assigned the potential claims to a water court did not provide nonparties to the adjudication with actual notice in the absence of a published resume listing the source of the reserved rights as the mainstem of the Colorado River. The United States fails to indicate how stipulations between the United States and applicants for appropriative rights in another water adjudication proceeding could have provided actual notice to nonparties in this case.

We conclude that the water court's denial of the amendment's relation back to the original application was correct. Neither the original application nor any other source cited gave adequate notice to nonparties of the source of the water claimed in the amendment.

### III.

The water court denied antedation of the claim in the amendment, thereby preventing the claim from receiving a priority date based on the NOSRs' reservation dates of 1916 and 1924. In granting Denver's motion for entry of judgment under C.R.C.P. 54(b) on March 22, 1984, the court stated that "[i]t is clear under the circumstances here that applicant cannot now make a claim to reserved rights in the mainstem of the Colorado River with antedation." The court allowed the United States to pursue its claims to water "in or on" the NOSR lands described in its original application filed December 31, 1971, but entered final judgment "denying the claims sought by the United States for an antedated water right for water from the mainstem of the Colorado River" and stated that "the [United States'] requested claim of the Colorado River mainstem water right with a priority date based on the date of the reservation of the Naval Oil Shale Reserves is hereby expressly and finally denied." The effect of the water court's March 22, 1984, ruling therefore is not only to deny the relation back of the mainstem Colorado River claim to 1971 but also to deny the mainstem Colorado River claim a priority date based on the dates of the NOSRs' reservation. In order to determine why denial of relation back has this effect and whether such a ruling is proper, we first consider the purposes and effect of the McCarran Amendment, 43 U.S.C. § 666 (1982).

Before the enactment of the McCarran Amendment, sovereign immunity barred in-

---

**12.** Although the United States cites articles by Laitos and Trelease as notice to nonparties, both commentators doubted the possibility for suc-
cess of the United States' belated attempt to claim nonappurtenant reserved rights for the NOSRs. *See* Laitos, *supra;* Trelease, *supra.*

voluntary joinder of the United States as a party in state court general water rights adjudications. *United States v. City and County of Denver*, 656 P.2d 1, 8–9 (Colo. 1983); *see United States v. District Court for Eagle County*, 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971); S.Rep. No. 755, 82d Cong., 1st Sess. 5 (1951). Although the states, particularly those in the West that have adopted a system of prior appropriation, had developed orderly procedures for the allocation and determination of water rights, the extent and priority of federal water rights, including federal reserved rights, were unknown and not subject to adjudication or determination in state courts. *See* S.Rep. No. 755, at 5–6. To remedy this situation, the McCarran Amendment provides in pertinent part:

> Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under state law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reasons of sovereignty, and (2) shall be subject to the judgment, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under the circumstances....

43 U.S.C. § 666(a) (1982). Consistent with the McCarran Amendment's purpose of allowing a determination of the extent of federal water rights, courts have interpreted the McCarran Amendment as waiving sovereign immunity as a bar to involuntary joinder of the United States in state court general water rights adjudications involving reserved rights. *See United States v. District Court for Eagle County*, 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278; *United States v. District Court for Water Division No. 5*, 401 U.S. 527, 91 S.Ct. 1003, 20 L.Ed.2d 284 (1971); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

■ Allowing the United States to be joined as a party in state water court adjudications, however, created the potential for conflict between federal and state law. Federal water rights exist independently of state law and state procedures, *Cappaert v. United States*, 426 U.S. 128, 145, 96 S.Ct. 2062, 2072, 48 L.Ed.2d 523 (1976), and federal reserved rights vest on the date of the land's reservation by the federal government. *United States v. City and County of Denver*, 656 P.2d at 21; *see Navajo Development Co. v. Sanderson*, 655 P.2d 1374, 1379 (Colo.1982); *Cappaert*, 426 U.S. at 139 n. 5, 96 S.Ct. at 2070 n. 5. In Colorado, which has adopted a system of water rights based on prior appropriation, federal reserved rights are superimposed on the state system. *Sierra Club v. Block*, 622 F.Supp. 842, 852 (D.Colo.1985).

■ Under Colorado law, vested appropriative water rights are subject to the postponement doctrine set out in section 37–92–306, 15 C.R.S. (1973).[13] Priority of

---

**13.** Section 37–92–306 provides in part:

[T]he priority date awarded for water rights or conditional water rights adjudged and decreed on applications for a determination of the amount and priority thereof filed in such division during each calendar year shall establish the relative priority among other water rights or conditional water rights awarded on such applications filed in that calendar year; but such water rights or conditional water rights shall be junior to all water rights or conditional water rights awarded on such

applications filed in any previous calendar year and shall also be junior to all priorities awarded in decrees entered prior to June 7, 1969, or decrees entered in proceedings which were pending on such date....

The water adjudication in which the United States was joined began in 1967, but the United States did not file its claims until December 1971. Section 37–92–306 (originally section 148–21–22) was not enacted until 1969, *see* Ch. 373, sec. 1, 1969 Colo. Sess. Laws 1200, 1212, repealed and reenacted, Ch. 373, sec. 1, 1971

appropriation determines the relative priority among water rights or conditional water rights awarded in one calendar year, but, regardless of the date of appropriation, water rights or conditional water rights decreed in one year are necessarily junior to all priorities awarded in decrees in prior years. § 37–92–306; *see City and County of Denver v. Northern Colorado Water Conservancy District,* 130 Colo. 375, 276 P.2d 992 (1954). Water rights are obtained by a combination of acts and intent constituting appropriation and are not dependent upon adjudication. *See Cresson Consolidated Gold Mining & Milling Co. v. Whitten,* 139 Colo. 273, 338 P.2d 278 (1959); § 37–92–305(1), 15 C.R.S. (1973); § 37–92–306, but failure to adjudicate the rights results in the rights being junior to rights previously adjudicated. *Hardesty Reservoir, Canal & Land Co. v. Arkansas Valley Sugar Beet & Irrigated Land Co.,* 85 Colo. 555, 277 P. 763 (1929); *Huerfano Valley Ditch and Reservoir Co. v. Hinderlider,* 81 Colo. 468, 256 P. 305 (1927). The priority of unadjudicated water rights, relative to previously adjudicated water rights, is therefore "postponed."

Because the United States was not subject to joinder prior to the McCarran Amendment and its absence from previous adjudications was privileged, once it is properly joined and provided the opportunity to adjudicate its claims, it may be decreed reserved water rights with priorities that antedate other adjudicated water rights to the date of the reservation. To that extent the postponement doctrine does not prevent the United States from receiving the priorities to which it would otherwise have been entitled.[14] However, the postponement doctrine does apply to the United States' amendment claiming water from the mainstem of the Colorado River. Were the amendment to relate back to the original application, and thus antedate prior claims, the purposes of the McCarran Amendment would be frustrated, and the United States would have avoided the equivalent of a filing deadline.

The McCarran Amendment was meant to promote certainty in water allocation by subjecting undeclared and unquantified federal water rights to state adjudication:

> It is most clear that where water rights have been adjudicated by a court and its final decree entered, or where such rights are in the course of adjudication by a court, the court adjudicating or having adjudicated such rights is the court possessing the jurisdiction to enter its orders and decrees with respect thereto and thereafter to enforce the same by appropriate proceedings. In the administration of and the adjudication of water rights under State laws the State courts are vested with the jurisdiction necessary for the proper and efficient disposition thereof, and by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights. Accordingly all water users on a stream, in practically every case, are interested and necessary parties to any court proceedings. It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its departments is permitted to claim immunity from suit in, or

---

Colo. Sess. Laws 1333, but section 37–92–306 merely codified the postponement doctrine developed by this court. *See Hardesty Reservoir, Canal & Land Co. v. Arkansas Valley Sugar Beet & Irrigated Land Co.,* 85 Colo. 555, 559, 277 P. 763, 765 (1929); *Huerfano Valley Ditch and Reservoir Co. v. Hinderlider,* 81 Colo. 468, 256 P. 305 (1927); *Farmers' High Line Canal & Reservoir Co. v. Southworth,* 13 Colo. 111, 21 P. 1028 (1889); 1935 C.S.A., C.90, §§ 189(24) 195; Ch. 130, secs. 1, 2, 1903 Colo.Sess.Laws 297, 297–98; Comment, *Determining Priority of Federal Reserved Rights,* 48 U.Colo.L.Rev. 547, 552–57 (1977).

**14.** Although we have not addressed specifically the relationship of Colorado's system of adjudication under section 37–92–306 to the priority date of federal reserved rights, *see Navajo Development Co.,* 655 P.2d at 1379 n. 3, we have awarded priority dates for water reserved for federal parks based on the dates the lands were initially reserved as national forest lands, not on the dates the lands were transferred to national park status. *See United States v. City and County of Denver,* 656 P.2d at 30.

orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees and orders of the State courts. Unless Congress has removed such immunity by statutory enactment, the bar of immunity from suit still remains and any judgment or decree of the State court is ineffective as to the water right held by the United States. ... The bill (S. 18) was introduced for the very purpose of correcting this situation and the evils growing out of such immunity.

The committee believes that such a situation cannot help but result in a chaotic condition. ... If a water user possessing a decreed water right is immune from suits and proceedings in the courts for the enforcement of valid decrees, then the years of building the water laws of the Western States in the earnest endeavor of their proponents to effect honest, fair and equitable division of the public waters will be seriously jeopardized.

S.Rep. 755, at 4–5. The Senate report also states that "it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the state, if there is to be a proper administration of the water law as it has developed over the years." *Id.* at p. 6; *see also United States v. District Court for Eagle County,* 169 Colo. 555, 566, 458 P.2d 760, 765 (1969), *aff'd* 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971). We believe the certainty that the McCarran Amendment attempts to provide by allowing joinder of the United States in water adjudications would be destroyed if, under the reserved rights doctrine, the United States were able to add a separate claim for mainstem Colorado River water rights through an amendment with relation back to the original application for water rights made thirteen years before for water from a different source.

The United States asserts that Colorado's postponement doctrine should not prevent relation back of the amendment and antedation of the claim to mainstem Colorado River water because the United States may claim the entire natural flow of certain streams on reserved land, without quantifying the claim in cubic feet per second or acre feet, even though a state statute requires numerical quantification. *Avondale Irrigation District v. North Idaho Properties, Inc.,* 99 Idaho 30, 577 P.2d 9, 18–20 (1978). However, claiming the entire natural flow of the source without quantifying the claim provides notice to other holders of water rights that claiming an entirely different source does not provide.

■ Moreover, if the United States' claims to water in or on the reserved lands had already been adjudicated, the United States could not now seek antedated priority for a new claim. The doctrine of res judicata bars the United States from reopening reserved water rights adjudications even where prior claims have not been adjudicated or the United States erroneously has omitted certain claims. *See Nevada v. United States,* 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); *Arizona v. California,* 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *Green River Adjudication v. United States,* 17 Utah 2d 50, 52, 404 P.2d 251, 252 (1965). The United States notes that *Arizona v. California* involved a final decree of water rights, not an amendment as in this case, but the important point is that just as parties rely on a final decree of federal reserved rights, the nonparties who received the 4400 individual water rights on the Colorado River mainstem decreed in Water Division No. 5 between 1971 and 1983 also relied on the fact that the United States had made a claim only to waters "in or on" the reserved lands and not to water from the Colorado River mainstem.

In failing to claim water from the Colorado River mainstem in 1971, the United States ignored the equivalent of a filing deadline. Except for the adjudication of water rights involving wells, section 37–92–306 provides that water rights or conditional water rights filed within the same calen-

dar year are junior in priority to water rights or conditional water rights awarded on applications filed in previous calendar years. The United States must submit its quantified reserved water rights for administration by state officials, *Navajo Development Co.*, 655 P.2d at 1379–80, and the United States in this case admitted that it must abide by all state court procedures that permit a fair determination of federal reserved water rights or risk losing them. After litigation resolving the water court's jurisdiction over the reserved rights' claims of the United States ended in 1971,[15] the federal government had the remainder of the year to state its antedated claims. The United States failed to file its claim to mainstem Colorado River water before the end of 1971. Therefore, the postponement doctrine applies to the amendment and prevents its antedation.

In integrating federal and state water rights, we have compared federal reserved rights to conditional senior water rights, for which a holder must obtain a finding of reasonable diligence by a water referee every four years after application. *Navajo Development Co.*, 655 P.2d at 1380; §§ 37–92–301(4), 15 C.R.S. (1973); 37–92–302(1), 15 C.R.S. (1985 Supp.). Failure to meet the requirements of showing reasonable diligence results in forfeiture of a conditional water right. *See* § 37–92–301(4). Similarly, by not filing all of its claims for reserved water for the NOSRs within a single calendar year the United States has not met the deadline for antedation.[16]

▇▇▇▇▇▇ Contrary to the United States' assertions, this is not a case where state law frustrates federal reserved rights

**15.** We discussed the procedural background that led to the United States' stating its claim and seeking state court confirmation of its right to the use of water on the NOSRs in 1971 in *United States v. City and County of Denver*, 656 P.2d at 9–11:

> The enactment of the McCarran Amendment did not lead to an immediate wholesale adjudication of federal water rights, for the predicate to such proceedings was the commencement of a general adjudication to which the United States was joined as a necessary party. In November 1967, however, the Colorado River Water Conservation District (District) began a proceeding for a supplemental adjudication of water rights in former Water District 37 under the now superseded Colorado Water Adjudication Act of 1943, C.R.S. 1963, 148–9–7. Pursuant to the McCarran Amendment, the District effected service of process on the United States. The United States then commenced an original proceeding in this Court seeking a writ of prohibition to bar the Eagle County District Court from asserting jurisdiction over the water rights of the United States.
>
> In *United States v. District Court for Eagle County*, 169 Colo. 555, 458 P.2d 760 (1969), this Court rejected the challenge of the United States to the jurisdiction of the district court....
>
> The United States sought and secured certiorari review of the decisions in *Eagle County* and in the companion case of *United States v. District Court for Water Division No. 5* (S.Ct. No. 24821, unpublished decision announced July 9, 1970), in which a writ of prohibition was denied in similar proceedings in Water Divisions 4, 5, and 6. Both decisions were

> unanimously affirmed. *United States v. District Court for Eagle County*, 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971); *United States v. District Court for Water Division No. 5*, 401 U.S. 527, 91 S.Ct. 1003, 28 L.Ed.2d 284 (1971). In *Eagle County*, the United States Supreme Court found no obstacle to the adjudication of federal rights under Colorado law. Similarly, in *Water Division No. 5*, the Court again rejected the sovereign immunity claim advanced by the United States.
>
> Following the final adjudication of its sovereign immunity claims, the United States submitted claims for water rights in each of the proceedings in which it had been joined in the appropriate district or water courts.

(Footnotes omitted.)

**16.** Our treatment of the United States' claims to reserved water rights is similar to our treatment of unadjudicated appropriative rights prior to adoption of the statute requiring adjudication of nonirrigation rights. Ch. 130, secs. 1, 2, 1903 Colo.Sess.Laws 297, 297–98. If the holder of appropriative rights appeared in the first available adjudication after the date of the act, the adjudication resulted in a priority date based on the initial appropriation. *See Larimer & Weld Reservoir Co. v. Fort Collins Milling & Elevator Co.*, 60 Colo. 241, 152 P. 1160 (1915). If the holder of the nonirrigation appropriative right failed to assert the right in the first adjudication following the effective date of the 1903 act, the right's priority date could not antedate that of a priority confirmed in any prior adjudication. *See Hardesty Reservoir, Canal & Land Co. v. Arkansas Valley Sugar Beet & Irrigated Land Co.*, 85 Colo. 555, 277 P. 763 (1929).

claims. First, the McCarran Amendment's effect was to place federal reserved rights within the state adjudication system. *See Navajo Development Co.*, 655 P.2d at 1379. Second, had the United States asserted a claim to mainstem Colorado River water in its initial application, the water court may have awarded the claim to Colorado River mainstem water an antedated priority.[17] Finally, if the amendment merely had clarified the original claim, the original claim as amended may have qualified for antedation. In this case, however, unless the new claim added by the amendment is subject to the postponement doctrine in section 37–92–306 the United States would have no incentive to file all claims to reserved water rights at one time. The certainty provided by adjudication of the United States' reserved rights through joining the United States in state court water adjudications would be destroyed because, for the entire period of the adjudication, those whose rights were being adjudicated would be unsure about the source of the water claimed. The water court ruled correctly that the United States' Colorado River mainstem claim did not relate back to 1971 and the United States was not entitled to priority dates of 1916 and 1924, the dates of reservation of the NOSRs.

## IV.

The water court certified its rulings that the United States' claim to Colorado River mainstem water did not relate back to the 1971 application and that the claim did not relate back to the date the land was reserved as final, and thus subject to appeal, under C.R.C.P. 54(b). C.R.C.P. 54(b) provides as follows:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims, or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.[18]

In order for C.R.C.P. 54(b) to apply, either multiple claims or multiple parties must be involved.[19] 10 C. Wright, A. Miller, & M. Kane, *Fed. Practice and Procedure: Civil 2d* § 2656, at 47 (1983). The water court's ruling in this case affected multiple parties because if the water court had granted the amendment relation back and antedation, the priorities of those whose rights were adjudicated based on claims filed between 1971 and the motion to amend would be vulnerable to the United States' reserved rights claims. *See Nevada v. United States*, 463 U.S. 110, 144, 103 S.Ct. 2906, 2925, 77 L.Ed.2d 509 (1983) ("Nonparties such as the subsequent appro-

---

**17.** Because the amendment does not relate back, the amendment's claim to water from the mainstem of the Colorado River does not have a priority date based on the date of the reservation of the NOSRs; therefore, we need not reach the question of whether the United States may claim reserved rights from water sources that are not appurtenant to the reserved land.

**18.** Except for two insignificant differences in punctuation, C.R.C.P. 54(b) is identical to Fed.R. Civ.P. 54(b). Case law interpreting the federal rule is therefore persuasive in interpreting the Colorado rule.

**19.** *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 (Colo.1982), provides that in deciding whether to issue a C.R.C.P. 54(b) certification, a trial court must (1) determine that the decision to be certified is a ruling upon an entire claim for relief, (2) conclude that the decision is final, and (3) determine whether there is no just reason for delay in entry of final judgment on the claim. *See also Linnebur v. Public Service Co.*, 716 P.2d 1120 (Colo.1986). Neither *Harding Glass* nor *Linnebur* involved multiple parties; therefore, the first of the *Harding Glass* requirements does not apply to this case.

priators in these cases have relied just as much on the ... decree in participating in the development of western Nevada as have the parties of that case").

■ Our second inquiry in this case focuses on whether the water court's ruling affecting multiple parties was final. Commentators warn against construing the words "final judgment" in Fed.R.Civ.P. 54(b) too narrowly, noting that it is not necessary that the rights and liabilities of a party or claim be decided on the merits. Wright & Kane, *supra*, § 2656, at 50–51. Although a partial summary judgment is considered interlocutory and unappealable, a judgment dismissing parties from the suit is considered a final judgment. *See Encoder Communications, Inc. v. Telegen, Inc.*, 654 F.2d 198 (2d Cir.1981) (order dismissing one or more parties may be final); *Strama v. Peterson*, 541 F.Supp. 75 (N.D.Ill.) (ruling on claim for attorney's fees against defendant who was dismissed from case because of settlement is appealable), *vacated on other grounds*, 689 F.2d 661 (7th Cir.1982); *cf. Levine v. Empire Savings and Loan Association*, 192 Colo. 188, 557 P.2d 386 (1976) (dismissal of class action allegation is final order because its legal effect is dismissal of all members of the class other than petitioners).

■ Although rulings on amendments are ordinarily not considered final orders, *Lockett v. General Finance Loan Co.*, 623 F.2d 1128, 1129 (5th Cir.1980), in this case the water court's ruling, like a dismissal of class action allegations, had the effect of dismissing holders of water rights to the mainstem of the Colorado River whose rights were adjudicated between 1971 and the motion to amend.[20] By ruling that the United States' claims to the mainstem Colorado River water do not relate back to 1971 or the date of the land's reservation, the water court made it unnecessary for the holders of these adjudicated rights to oppose the United States' claims to mainstem Colorado River water, in effect dismissing them as possible parties.[21]

The remaining question, whether there is just reason for delay in entry of final judgment, is committed to the sound discretion of the trial court. *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 (Colo.1982). The water court did not abuse its discretion in determining that there was no just reason for delay. The relation back and antedation issues were appropriate for review under C.R.C.P. 54(b). We hold that the United States' claim to mainstem Colorado River water in 1983 does not relate back to its original application in 1971, that the claim set forth in the amendment may not receive an antedated priority date, and that final judgment pursuant to C.R.C.P. 54(b) was proper.

Judgment affirmed.

ERICKSON, J., specially concurs, and VOLLACK, J., joins in the special concurrence.

ERICKSON, Justice, specially concurring:

I concur with the reasoning and result reached by the court. I write separately to

---

**20.** In addition, an order denying leave to amend pleadings to add a party defendant is also a final order if the statute of limitations would have barred a separate suit against the new defendant. *Lockett*, 623 F.2d 1128. Denial of relation back in this case was also the equivalent of a denial of a motion to amend after the statute of limitations had run because the United States' claim to mainstem Colorado River water will not have a 1971 priority date or be antedated to the date of the NOSRs' reservation, but will have a 1983 priority date. Joining the United States as a party to the water adjudication in Water Division 5 had the effect of forcing the United States to claim and quantify the water reserved for the NOSRs or lose its priority date. In papers filed in this proceeding, the United States observes that the main value of the water right is in its priority date. *See Navajo Development Co. v. Sanderson*, 655 P.2d 1374, 1380 (1982). The loss of the antedation, therefore, is tantamount to the loss of the right and the bar of the claim by the statute of limitations.

**21.** In the normal water case, where the affected parties are not as numerous and the potential impact of the rights claimed is not as great, a water court ruling that has the effect of eliminating one or more objectors or holders of water rights is not necessarily a final judgment.

express my view that the McCarran Amendment has very limited relevance in a state water adjudication like the present one in which the United States is the water applicant and not the "defendant."

The court does not clearly state the procedural origin of the federal reserved claims at issue here. The court's opinion at footnote 15, quoting *United States v. City and County of Denver,* 656 P.2d 1, 9–11 (Colo.1982) (*Denver I*), seems to indicate that the NOSR claims were "cross-filed" by the United States in private water adjudications in which the United States had been involuntarily joined under the McCarran Amendment. This implication is incorrect. Although many cases involving federal rights were pending in the water courts in 1971, the record clearly shows that the present case at its inception was filed by the United States as water *applicant* under the 1969 Water Rights Act. *In re the Application for Water Rights of the United States of America,* No. W–467 (Water Div. No. 5 filed Dec. 31, 1971). More than sixty parties filed statements of opposition. In addition, *Denver I* expressly refers to the present action:

> The federal government argues that there may be circumstances in which water not adjacent to a reservation could be reserved and in which off-reservation use of waters flowing on a reservation may be justified. These issues are presently hypothetical. We decline to resolve them in a case where there has not been a specific factual claim presenting an actual case or controversy. We are aware that *a pending case involving naval oil shale reserves* presents these issues in a proper factual context and will reserve our judgment accordingly. *See In the Matter of the Application for Water Rights of the United States of America,* No. W467 (Water Div. No. 5 filed Dec. 31, 1971).

*Denver I,* 656 P.2d at 35 (emphasis added). The United States is the water applicant in the present case, not the defendant-objector.

The McCarran Amendment provides that "[c]onsent is hereby given to join the United States as a *defendant....*" 43 U.S.C. § 666 (1982) (emphasis added). The amendment has no express applicability when the United States originates the state-court action and does not provide that the priority of federal reserved rights is subject to modification when the water applications of the United States do not comply in every respect with state rules of civil procedure. The sole purpose of the amendment is to allow the United States to be joined as a defendant in a state water action in which it is necessary to adjudicate all outstanding private and public claims. *United States v. District Court,* 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971). Prior to the McCarran Amendment, sovereign immunity precluded involuntary joinder of the United States as a defendant in state water adjudications.

Although it is not well settled whether state procedural rules may in all situations divest federal reserved rights, some cases express a policy disfavoring modification of federal water rights on the basis of state water application procedures. *See, e.g., United States v. California,* 403 F.Supp. 874 (E.D.Cal.1975).

However, in the present case the United States consented to the jurisdiction of the Colorado water courts when it filed the water applications and amendment at issue here. In addition, the general policy of certainty and finality that is advanced by the McCarran Amendment and expressed in the authorities interpreting the amendment supports the conclusion that substantive federal reserved water rights should be subject to procedural restrictions in state courts when the United States is the water applicant.

With this reservation about the meaning of the McCarran Amendment, I concur in the reasoning and result reached by the court.

I am authorized to say that VOLLACK, J., joins in this special concurrence.