MULLARKEY, Chief Justice.
I. Introduction
The petitioners, various private and public Colorado entities, challenge a stay order entered by the water court that delays quantification of the United States' reserved water right in the Black Canyon of the Gunnison National Park until after federal litigation on related issues is resolved. The stay was requested by several environmental groups ("Environmental Opposers") after they filed an action in federal court contesting the administrative decision making process that led the United States to reduce the amount of water it claims for the park and amend its quantification application. In this original proceeding, petitioners challenge the water court's grant of the stay as an abdication of its jurisdiction and argue that the stay substantially and irreparably harms their ability to litigate the merits of the case. The Environmental Opposers contend that the federal case presents distinct claims over which the federal court has exclusive jurisdiction and that the need for the stay outweighs any prejudice to the petitioners. We review the water court's order for abuse of discretion and uphold it.
The McCarran Amendment, 48 U.S.C. § 666 (2004), allows a party to involuntarily *1071 join the United States as a necessary party in a comprehensive state water court adjudication. The question presented by this case is whether the MeCarran Amendment's waiver of sovereign immunity is so broad that it allows state courts to evaluate and adjudicate federal agencies' decision making processes related to the quantification application. Based on our review of the McCarran Amendment's text and legislative history, as well as the text and legislative history of the judicial review provisions of the federal Administrative Procedure Act, we conclude that the scope of the sovereign immunity waiver under the McCarran Amendment is not so broad. From this conclusion, it follows that there must be both state and federal proceedings to resolve all the issues related to the United States' Black Canyon water right.
Because the federal court has exclusive jurisdiction over the federal claims and resolution of those claims may require the United States to claim a greater reserved water right for the Black Canyon, we hold that the water court acted within its discretion when it stayed the proceedings until the federal litigation is resolved. Comity and consideration of the relief available to the parties favor the award of a stay in the water case as well. Given the fact that the quantification proceeding for the Black Canyon has already been delayed for nearly thirty years, we see no great prejudice to the petitioners in temporarily staying the proceedings because they are not precluded from contending that the United States' water right should be narrow. Petitioners are able to, and have taken steps to, protect their rights in the federal proceeding. Given the finality of a decree once it is issued, Environmental Op-posers would not be able to protect their interests and federal claims in the same way if the stay were lifted.
We issued a rule to show cause why the water court should not reverse its order granting the motion for stay. Because we find that the water court acted within its discretion in granting the stay, we now discharge the rule.
I. Facts and Procedural History
Quantification of the United States' reserved water right for the Black Canyon of the Gunnison has a long and convoluted history. The Black Canyon first became a national monument in 1983 when President Herbert Hoover designated it as such "for the preservation of the spectacular gorges and additional features of scenic, scientific, and educational interest." Black Canyon of the Gunnison National Monument-Colorado, By the President of the United States of America, Proclamation No.2088 (March 2, 1983) at 1. In 1999, Congress passed the Black Canyon Act, elevating the monument to national park status. 16 U.S.C. § 410fff (2004).
Under the reserved rights doctrine, the United States is entitled to the quantity of water from the Gunnison River necessary to satisfy the aesthetic, environmental, recreational and educational purposes for which the Black Canyon was reserved. See Cappaert v. United States, 426 U.S. 128, 188, 96 S.Ct. 2062, 48 L.Ed.2d 5283 (1976). To quantify this right, a court must determine the precise federal purpose to be served, that the purpose would be frustrated without water, and the minimum quantity of water required to fulfill the purpose. United States v. City & County of Denver, 656 P.2d 1, 18 (Colo.1982). A Colorado water court acquired jurisdiction to determine the United States' water rights to the Black Canyon by virtue of the McCarran Amendment. 48 U.S.C. § 666.
On March 6, 1978, after several years of proceedings, the water court issued an interlocutory decree awarding the United States absolute and conditional water rights for the Black Canyon. The decree recognized the United States' priority dates of 1988, 1988, and 1939 for the federal reserved water right. The decree determined the purposes of the reservation: "to conserve and maintain in an unimpaired condition the seenic, aesthetic, natural, and historic objects of the monument, as well as the wildlife therein, in order that the monument might provide a source of recreation and enjoyment for all generations of citizens of the United States." Although the court deferred quantification of the conditional water rights until they were made final at a later date, the decree explicitly recognized that the purposes of the Black *1072 Canyon entitled the United States to direct flow water rights for a broad range of uses. These uses included the "development, conservation, and management of resident and migratory wildlife," "[florest improvement and protection uses," "[ulses for fish culture, conservation, habitat protection, and management," and "[uJses for the preservation of scenic, aesthetic, and other public values."
Twenty-three years later, the United States filed an application to quantify its conditional water rights for the Black Canyon. In its January 2001 application, the United States claimed year-round base flows of 300 cubic feet per second ("cfs") and higher peak and shoulder flows tied to the expected natural spring run-off each year. Depending upon the quantity of water required to maintain spring peak flows, the United States reserved the right to claim up to an additional 10,000 efs for part of each year.
More than 380 parties, including the Environmental Opposers, filed statements in opposition to the initial quantification application, and many became parties to the water court case. The water court granted two consecutive six-month stays of proceedings so that the United States could enter into settlement discussions with the parties opposing the application. The Environmental Opposers were not invited to participate in any negotiations concerning settlement.
On April 2, 2008, the United States and the State of Colorado entered into an agreement ("April Agreement"). In the April Agreement, the United States relinquished its reserved right to peak and shoulder flows, and claimed a year-round base flow of the lesser of 300 cfs in-stream or natural flow. On the same day, to reflect this agreement, the United States filed a motion to amend its quantification application and a proposed amended application with the water court.
On July 31, 2008, the United States and the State of Colorado entered into a further Memorandum of Agreement ("MOA") concerning the federal government's water rights for the Black Canyon. Under the MOA, the United States delegated the appropriation of peak and shoulder flows to the Colorado Water Conservation Board's (@CWCB") in-stream flow program, and agreed to a 2008 priority date for these water rights. The United States retained no right to enforce the in-stream water right except through an action for specific performance of the MOA.
The Environmental Opposers objected to the United States' motion to amend its quantification application reducing its claim of water. On August 5, 2003, the Environmental Opposers filed a complaint against the United States regarding the amended application in the federal district court (Case No. O3WY1712CB), and orally requested a stay from the water court. In the federal case, the Environmental Opposers sued the United States Department of the Interior ("Interi- or"), the National Park Service, and the heads of both agencies in their official capacities (collectively, "the United States"). The federal complaint alleges that the United States' decisions regarding the protection and management of the water-related natural resources of the Black Canyon violated various provisions of federal law, including the National Park Service ("NPS") Act, 16 U.S.C. § 1 (2004), the Black Canyon Act, 16 U.S.C. § 410fff, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4881 (2004), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 (2004)[1] The Environmental Opposers seek both declaratory *1073 and injunctive relief pursuant to the judicial review provision of the Administrative Procedure Act, 5 U.S.C. § 706 (2004). Among their requests is that the federal district court:
Order Defendants to cease their violations of law, specifically by securing river flows for the Black Canyon in quantities and with the frequencies necessary to fulfill the Defendants' obligations to the Park under the NPS Act and the Black Canyon Act and to serve the purposes for which the Black Canyon was reserved, by asserting the federal government's reserved water right or otherwise; [and,] [hJold unlawful and set aside Defendants' Proposed Amended Application in water court as in violation of federal law ....
First Amended Complaint Y G-H (emphasis added).
On September 12, 2008, the Environmental Opposers filed a written motion for stay of the quantification proceeding for the Black Canyon, asking that a stay be granted until resolution of the federal litigation. The petitioners opposed the stay, arguing that further delay would irreparably prejudice them and that the Environmental Opposers were improperly attempting to transfer jurisdiction over quantification of the Black Canyon reserved right to federal court. The United States also opposed the stay, contending it was inappropriate because the federal litigation would not resolve all issues pending in the water court and because the Environmental Opposers were unable to show a pressing need for the stay.
On October 7, 2003, the water court granted the stay. To reach this conclusion, the court underscored its discretion to decide whether to grant a stay, recognized the desire to avoid piecemeal litigation, and weighed the hardships, delays and prejudice to the petitioners. The court relied upon this court's decision in United States v. Bell, 724 P.2d 631 (Colo.1986), concluding that the Environmental Opposers would be "without adequate recourse" if they ultimately prevailed in their federal complaint and a stay had not been granted by the water court. The water court was careful to limit the parameters of the order:
This Order should not be construed as either deferring quantification of the water right or even whether to grant the Motion to Amend to the Federal Court, but rather, merely to stay these proceedings pending resolution of the federal questions raised in the Complaint filed in Federal District Court.
On April 15, 2004, the federal district court denied the United States' motion to dismiss the Environmental Opposers' federal claims. Relying upon the United States Court of Appeals for the Tenth Circuit's decision in Southern Utah Wilderness Alliance v. Norton, 301 F.3d 1217 (10th Cir.2002) ("SUWA 1)" which was later reversed, - U.S. -, 124 S.Ct. 28373, 159 LEd.2d 137 (2004) ("SUWA II "), the court determined that notwithstanding the discretion of Interior and the Park Service to decide the method of protecting the Black Canyon Park's resources, the court had jurisdiction to determine whether the agencies had maintained their non-discretionary, federal statutory duty to protect the park's resources under the judicial review provisions of the APA. The federal court also ruled that the Environmental Opposers had standing under the NEPA and agreed to hear their claims for unauthorized dispossession of federal property and unlawful delegation of authority, finding the United States' agreement with the CWCB merited further review.
The federal court was careful to clarify what it would not determine as well. The order explicitly states that the federal court will not determine "the exact amount of water necessary to fulfill the Park's purpose." However, the court acknowledges in the same sentence that the rights claimed by the United States in its proposed amended application may not satisfy its legal obligation to possess enough water under federal law.
On June 16, 2004, the Environmental Op-posers voluntarily dismissed the first claim of their federal complaint, after the United States Supreme Court reversed the Tenth Circuit's decision in SUWA I. - U.S. -, 124 S.Ct. 2378, 159 L.Ed.2d 137. In SUWA II, the U.S. Supreme Court held that a claim under the APA to compel ageney action unlawfully withheld or unreasonably delayed *1074 can proceed only where a plaintiff asserts that an agency failed to take an action it was required to take. Id. at 2879. SUWA II further specifies that although courts may direct an ageney to act, they have no power to specify terms of compliance with broad statutory mandates. Id. at 2380.
In the original proceeding now before us, petitioners challenge the water court's order staying the quantification proceeding pending resolution of the federal litigation as an abdication of its jurisdiction and responsibility to determine issues regarding the quantification of the federal reserved water right. We issued a rule to show cause why the water court should not be ordered to vacate the stay and requested the parties to brief and argue the issue. Because we find that the water court acted within its discretion in granting the stay, we now discharge the rule.
II. Jurisdiction and Standard of Review
Under C.A.R. 21, we may exercise original jurisdiction to determine whether a trial court has abused its discretion or is proceeding without or in excess of its jurisdiction. People v. Miller, 25 P.3d 1230, 1231 (Colo.2001). Original jurisdiction may also be appropriate when a pre-trial ruling places a party at a "significant disadvantage in litigating the merits of the controversy." Leaffer v. Larlengo, 44 P.3d 1072, 1077 (Colo.2002). In either cireumstance, the threshold consideration is whether conventional appellate remedies are adequate to address the petitioning party's complaint. Id.; Miller, 25 P.3d at 1281.
A stay is not a final order or judgment. Gergel v. High View Homes, L.L.C., 58 P.3d 1132, 1134 (Colo.App.2002). Accordingly, a party challenging the validity of a stay generally does not have recourse to conventional appellate remedies. Id. The only occasions when a stay order is conventionally appeal-able are when it practically operates as a final order or dismissal, or is equivalent to the refusal to issue a temporary injunction. See Idlewild Bon Voyage Liquor Corp. v. Epstein, 870 U.S. 718, 715 n. 2, 82 S.Ct. 1294, 8 LEd.2d 794 (1962) (A stay order to await determination of an issue by a state court where no litigation had commenced was ap-pealable as a final order since the appellant was effectively out of court.); Glen Oaks Utils., Inc. v. City of Houston, 280 F.2d 330, 332-33 (5th Cir.1960) (Because a stay order entered in an action for injunctive relief was equivalent to the refusal to issue a temporary injunction, the stay was appealable under 28 U.S.C. § 1292).
In this case, petitioners invoke the original jurisdiction of this court to challenge the stay, arguing that the order amounts to an abdication of the water court's jurisdiction and irreparably prejudices their ability to litigate the merits of the case. Based on our review of the water court's order, we conclude it was neither so indefinite as to be the practical equivalent of a dismissal, nor so broad in duration and seope that it operated as a final order. The stay order also was not entered in an action for injunctive relief. Therefore, conventional appellate remedies are not available to petitioners to challenge the stay. Because this is a matter of public importance and there is no other avenue available to petitioners, we will exercise our original jurisdiction to determine whether the water court abused its discretion in this case.
IH. Analysis
To determine whether the water court abused its discretion in this case, we must first examine the federal reserved rights doe-trine, and the jurisdiction of a state court to quantify those rights under the McCarran Amendment. Because we conclude a state court does not have jurisdiction under the McCarran Amendment to determine the Environmental Opposers' federal claims, a federal court must determine those claims. Our remaining task is to consider whether the water court erred when it stayed the quantification proceedings until the federal litigation is resolved. To answer that question, we discuss the standard for determination of a stay and examine whether the water court complied with it. In doing so, we balance the competing benefits and prejudices that would result from granting or denying the stay in this case, including consideration of the po *1075 tential effects of res judicata and collateral estoppel.
A. The Federal Reserved Rights Doctrine and the McCarran Amendment
Under the reserved rights doctrine, when the United States withdraws land from the public domain for a federal purpose, it also reserves by implication unappropriated water to the extent necessary to accomplish the purpose of the reservation. Cappaert, 426 U.S. at 138, 96 S.Ct. 2062. Federal reserved rights exist independently of state law. Bell, 724 P.2d at 641. The right does not derive from actual use; instead, it is tied to the stated intent or purpose of the reservation. See Thomas Pacheco, How Big is Big? The Scope of Water Rights Suits Under the McCarran Amendment, 15 Ecology L.Q,. 627, 630 (1988) (citing Arizona v. California, 373 U.S. 546, 595-601, 88 S.Ct. 1468, 10 LEd.2d 542 (1968); Winters v. United States, 207 U.S. 564, 575-77, 28 S.Ct. 207, 52 L.Ed. 340 (1908)). The priority date is the date of reservation, and reserved water rights are superior to the rights of all subse-United States v. City quent appropriators. & County of Denver, 656 P.2d at 21. The federal government can assert its water rights at any time without abandonment or loss of priority because the rights vest on the date of the reservation. Arizona, 378 U.S. at 618, 83 S.Ct. 1468.
Before the McCarran Amendment was enacted, the United States could not be joined in state water court adjudications without its consent. See Bell, 724 P.2d at 640-1. Because of the prevalence of federal reserved water rights, particularly in the western United States, it was thought that state court procedures for the allocation and determination of water rights were being thwarted by the inability of state courts to ascertain or adjudicate federal water rights with finality. Id. at 641. As a result, meaningful stream adjudications proceeded only when the United States consented to participate. See John E. Thorson, State Watershed Adjudications: Approaches and Alternatives, 42 Rocky Min. Min. L. Inst. 22-1, 22-18 (1996).
In 1952, Congress enacted the McCarran Amendment, allowing state courts to involuntarily join the United States as a necessary party in comprehensive state adjudications of water rights.[2] 48 U.S.C. § 666. The legislative history of the McCarran Amendment reveals its dual purposes: 1) to promote certainty and finality, and 2) to avoid needless waste or controversy by requiring the federal government to assert any and all claims to the use of water in a comprehensive state adjudication of water rights. See S.Rep. No. 82-755, at 4-6 (1951)[3] Subsequent cases from the United States and Colorado Supreme Courts implementing the McCarran Amendment have confirmed these parameters and purposes. Seq, eg. Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 807-08, 96 S.Ct. 12836, 47 L.Ed.2d 483 (1976); United States v. Dist. Court, 401 U.S. 520, 525, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971) (Wagle County II); Bell, 724 P.2d at 641-42; United States v. Dist. Court, 169 Colo. 555, 568-65, 458 P.2d 760, 763-64 (Colo.1969) (Fagle County I ).
It is clear both from the language of the amendment itself, as well as its legislative history and interpretive precedent that, although McCarran proceedings are intended to be all-inclusive, the waiver of sovereign immunity is limited to proceedings to determine or administer the rights to the use of the water. Colorado River, 424 U.S. at 819, 96 S.Ct. 1286. By its terms, the McCarran Amendment provides:
*1076 Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like cireumstances
[[Image here]]
43 U.S.C. § 666 (emphasis added). The McCarran Amendment does not assert or imply that a state court would have jurisdiction to review the decision making process of federal entities, such as Interior or the Park Service, for compliance with federal law.
Indeed, such a conclusion would run contrary to the Administrative Procedure Act, the federal statute which establishes the practices and procedures followed by administrative agencies in rulemaking and adjudication. The language and legislative history of the APA's judicial review provisions make clear that Congress intended to hold federal administrative agencies answerable for their conduct only in federal courts 5 U.S.C. §§ 702, 706 (2004). Section 706 provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(I). Section 702 defines the seope of that review: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" is entitled to judicial review and may bring suit against the ageney. 5 U.S.C. § 702. However, the suit must be brought "in a court of the United States." Id. Thus, the waiver of sovereign immunity is expressly limited to federal court. See id.; see also Aminoil USA v. Calif. State Water Res. Control Bd., 674 F.2d 1227, 1288 (6th Cir.1982). The APA's legislative history underscores this intent, explicitly stating that the United States will remain immune from suit in state courts. Nat'l State Bank of Elizabeth v. Gonzales, 266 N.J.Super. 614, 630 A.2d 376, 381 (A.D.1998) (citing H.R.Rep. No. 94-1656, at 11 (1976), U.S.Code Cong. & Admin.News 1976 at pp. 6121, 6181).
The scope of the waiver of sovereign immunity under the McCarran Amendment is not so broad that it allows state courts to evaluate or adjudicate the federal agency decision making processes leading the United States to make a particular water application in a given case. The Environmental Opposers have brought claims in federal court that can only be decided by that court. Thus, there is no question that there will be both state and federal proceedings before the United States' reserved water right for the Black Canyon can be fully resolved. The federal case will decide whether the United States' amended application complied with the applicable federal law, and the state case will quantify the reserved water right. We recognize that the federal case may have an impact on the water court proceeding. Indeed, if the federal case had no impact on the state case, there would be no need for a stay. However, the water court will decide the quantification of the federal reserved right even if the federal court finds that the agency decision making was flawed and must be redone.
The only question remaining is whether the water court's decision to stay the proceedings and allow the federal case to be resolved first constituted an abuse of discretion. To answer this question, we examine the standard for determination of a stay, and consider whether the water court met it.
B. Stay of Proceedings
A trial court generally has discretion to grant or deny a stay. Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 158 (1986); In re Marriage of Fleet, 701 P.2d 1245, 1247 (Colo.App.1985). This discretion derives from "the power inherent in every court to control the disposition of the causes on its docket with economy *1077 of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254, 57 S.Ct. 168. Thus, we review the water court's order in this case for abuse of discretion, a highly deferential standard. Absent a finding that the lower court's actions were manifestly arbitrary, unreasonable, or unfair, this court will not overturn discretionary decisions. People v. Riggs, 87 P.3d 109, 114 (Colo.2004).
 Parties have the right to a determination of their rights and liabilities without undue delay. We have recognized the "tremendous uncertainty" that may be caused by conditional reserved water rights and urged that quantification of such rights be a priority of the water courts. United States v. City & County of Denver, 656 P.2d at 30. Thus, in any case, but particularly in the context of a reserved water right adjudication, the party requesting a stay must demonstrate a pressing need, and that it will suffer prejudice that exceeds potential harm to the other parties if the stay is not granted. See Adolph Coors Co. v. Davenport Mach. & Foundry Co., 89 F.R.D. 148, 153 (D.Colo.1981). To survive appellate review, the delay must not be "immoderate in extent" or "oppressive in its consequences." Landis, 299 U.S. at 256, 57 S.Ct. 168. Only rarely may a court compel a litigant in one case to stand aside while a litigant in another case settles the rule of law that will define the rights of both. Id. at 255, 57 S.Ct. 168.
Faced with a request for a stay, the trial court must examine all the circumstances of the case before it. When asked to stay a federal case pending a decision in state cases, the U.S. District Court for the District of Colorado identified the following relevant considerations:
comity, the extent of disputed factual (as opposed to legal) issues involved, the order in which the courts obtained jurisdiction, adequacy of relief available in state court, avoidance of maneuvers to clog efficient judicial machinery, the need for comprehensive litigation, and the desirability of avoiding piecemeal litigation.
Adotph Coors, 89 F.R.D. at 158. However, it is not a necessary prerequisite that the parties and issues in concurrent federal and state actions be identical. Landis, 299 U.S. at 254, 57 S.Ct. 168. Likewise, pendency of an action in state court, in and of itself, does not prevent a federal court from exercising jurisdiction over the same matter in a separate federal proceeding. Adolph Coors, 89 F.R.D. at 152.
Indeed, notwithstanding a state court's exercise of its concurrent jurisdiction in the same case, federal courts have a "virtually unflagging" obligation to decide cases over which they have jurisdiction. Colorado River, 424 U.S. at 817, 96 S.Ct. 1286. Abdication of this obligation is justifiable "only in the exceptional cireumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Id. at 818, 96 S.Ct. 1236.
If the cireumstances warrant, however, a court will stay its case pending resolution of independent proceedings which bear upon the case. Leyva v. Certified Grocers of Calif, 593 F.2d 857, 864 (9th Cir.1979) (trial court had authority to stay adjudication of employment claims pending arbitration of contract claims which would be of valuable assistance to the court); Procter & Gamble Distrib. Co. v. Lloyd's Underwriters, 44 Misc.2d 872, 255 N.Y.S2d 361, 364-66 (N.Y.Sup.Ct.1964) (state trial court had authority to stay proceedings until determination of two pending federal court actions on related issues). But see Adolph Coors, 89 F.R.D. at 158 (federal district court declined to stay proceedings despite the pendency of a state court action in the same case because it was not clear whether the state court would have jurisdiction over the case).
Appellate courts also will affirm the award of a stay if the balance of prejudices and interests of the parties justified the delay. For instance, the United States Court of Appeals for the Third Cireuit approved a stay order in Cheyney State Coll. Faculty v. Hufstedler, 708 F.2d 732 (3rd Cir.1988). A class of plaintiffs had alleged that Pennsylvania operated a segregated system of higher education. Id. at 784. The court concluded that stay of the litigation did not constitute an abuse of discretion because it was possible that the complex problems presented by *1078 the case could more readily be remedied through the flexibility of the administrative process actively in progress. Id. at 7838. In Chronicle Publ'g Co. v. National Broad. Co., the United States Court of Appeals for the Ninth Cireuit similarly found a stay order was appropriate pending investigation by the Federal Communications Commission of defendant's acquisition of a television station. 294 F.2d 744, 747-48 (9th Cir.1961). Because the issue being litigated was whether the acquisition violated antitrust laws, the court reasoned that staying the case until the Commission concluded its investigation was justifiable in order to avoid complex, duplicative proceedings. Id. at 749.
Courts disapprove stays of proceedings in cases when a lesser measure is adequate to protect the moving party's interests or when the balance of interests and prejudices comes out in the non-moving party's favor. In Dellinger v. Mitchell, the United States Court of Appeals for the District of Columbia Cireuit held that the total stay of proceedings in a civil action related to a criminal case was immoderate and invalid. 442 F.2d 782, 787 (D.C.Cir.1971). The United States had moved to stay the proceedings because it was concerned that the civil action was a stratagem to cireumvent orders in the criminal case limiting pretrial discovery. Id. at 785. In the court's view, a protective order regarding discovery would have been adequate to protect the government's interests.[4] Id. at 787.
When the harm to the non-moving party is greater than the prejudice caused to the moving party if the case were to proceed, the reviewing court will invalidate a stay. In Rehm v. Clayton, for example, the Kentucky Supreme Court held the trial court abused its discretion in a products lability action when it stayed discovery pending the outcome of an appeal of summary judgments in favor of the defendants. 182 S.W.3d 864, 870 (Ky.2004). The court held that the potential harm to the plaintiffs caused by the stay outweighed the slight risk that defendants would be required to repeat the discovery process if the summary judgments were reversed. Id. See also Ohio Envtl. Council v. Dist. Court, 565 F.2d 398 (6th Cir.1977); See. Ins. Co. of Hartford v. Trustmark Ins. Co., 283 F.Supp.2d 612 (D.Conn.2003).
-In this case, the water court granted the Environmental Opposers' motion to stay the proceedings based on its understanding of the doctrine of res judicata as applied to reserved rights adjudications. The water court reasoned that if it denied the stay and approved the United States' amended quantification application, the Environmental Oppo-sers would be without adequate recourse if they later prevailed on their federal claims. It reasoned that res judicata would prevent the reopening of the quantification decree.
Petitioners, however, contend the stay substantially and irreparably harms them because it causes delay and uncertainty and requires their costly participation in the federal case. Petitioners maintain as well that determinations in the federal case will determine the parameters of quantification of the United States' water right with preclusive effect. In response, Environmental Oppo-sers argue that the federal case presents distinct claims over which the federal court has exclusive jurisdiction, that resolution of the federal claims will not quantify the Black Canyon water right, and that the need for the stay outweighs any prejudice to the petitioners.
We hold the water court did not abuse its discretion in this case. To reach this conclusion, we balance the competing interests and prejudices to the parties.
C. Balance of Interests and Prejudices
To evaluate whether the water court abused its discretion we must consider all of the relevant facts and cireumstances of the case. Although not binding on us, the Adolph Coors factors provide a good framework for our analysis. The applicable Adolph Coors factors are: 1) the order in *1079 which jurisdiction was obtained, 2) the adequacy of relief available in state court, 3) comity, and 4) the need for comprehensive adjudication and attendant desire to avoid piecemeal litigation.[5]
First, as to the order of jurisdiction, the fact that the state water court obtained jurisdiction over the Black Canyon case before the federal case was initiated does not persuade us that the water court abused its discretion in granting the stay. The dual pending actions involving the Black Canyon water right will not resolve the same issue. Accordingly, this case is distinguishable from Colorado River, where the U.S. Supreme Court upheld the dismissal of a reserved rights adjudication initiated by the United States in federal court because a state water court was in the process of adjudicating the same case and the same rights. 424 U.S. at 800, 96 S.Ct. 1236. In this case, the state and federal proceedings involve different parties, claims, and issues. The order in which the state and federal courts obtained jurisdiction is even less compelling given the fact that the federal court has the sole authority to resolve the federal claims. Adoiph Coors presented a very different scenario. There, the federal court declined to stay its proceedings because the state case was in its initial stages and it was unclear whether the state court would even have jurisdiction to try the case. 89 E.R.D. at 158.
Second, consideration of the relief available to the parties favors the award of a stay in this case. This court's decision in Bell as well as U.S. Supreme Court precedent has made clear that onee the water court enters a decree, the doctrine of res judicata bars the United States from reopening a reserved water rights adjudication even where prior claims have not been adjudicated or the United States erroneously omitted certain claims. 724 P.2d at 648; Nevada v. United States, 463 U.S. 110, 180-81, 108 S.Ct. 2906, 77 L.Ed.2d 509 (1983); Arizona v. California, 460 U.S. 605, 619, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). Accordingly, if the water court were to proceed with this case, and enter a decree quantifying the United States' federal reserved water right, res judicata would bar the United States from later claiming a broader reserved right even if the federal court were to decide that the United States violated federal law when it amended its application. Because of this avoidable potential for conflict between federal and state courts, comity, the third factor, favors the award of a stay in this case.
We note as well that petitioners will not suffer the same level of prejudice if the water court's stay is upheld. Because the federal claims are necessarily intertwined with quantification of the United States' reserved water right, several of the petitioners have intervened in the federal case. Notwithstanding their invocation of the original jurisdiction of this court, petitioners have taken steps in order to protect their interests in the federal forum, although with the obvious result that they may incur considerable cost and effort to do so.
The stay will cause a delay of the water court's quantification proceeding. Although that delay is regrettable, we note that this proceeding has already been pending for nearly thirty years. Petitioners can show no great harm attributable to this relatively short delay. As we discussed earlier in this opinion, the state and the United States recently sought and were granted a twelve month delay by the water court in order to settle the case. The Environmental Oppo-sers, however, were excluded from the settlement negotiations.
The water court explicitly retained its jurisdiction to quantify the United States' reserved water right. The fact that the federal case may decide that the United States violated federal law when it reduced its water *1080 claim does not amount to a quantification of the water right. As the Supreme Court stated in SUWA II, under the APA, a federal court may direct an agency to act, but may not tell it what decision to reach. Seq, SUWA II, 124 S.Ct. at 2879. Because the federal action cannot and will not quantify the water right, we find that the stay order is not an abdication of the water court's jurisdiction. When the water court proceeding resumes, petitioners may still argue that the purposes of the United States' reservation of the Black Canyon are narrow, and that a modest amount of water is adequate to satisfy those purposes. The Petitioners do not face the res judicata barrier that will confront the Environmental Opposers if there were no stay.
Fourth and finally, the need for comprehensive adjudication and the desire to avoid piecemeal litigation do not warrant a lifting of the stay in this case. Because of the exclusivity of the federal court's jurisdiction over the federal claims, dual proceedings are necessary and the McCarran Amendment's policy to avoid piecemeal litigation is inapplicable. As stated above, resolution of the federal case may influence the parameters of the water court's decision, but it will not quantify the United States' reserved water right.
IV. Conclusion
Because the federal court has exclusive jurisdiction over the federal claims raised by the Environmental Opposers and resolution of those claims may require the United States to claim a broader reserved water right for the Black Canyon of the Gunnison National Park, we hold that the water court acted within its discretion when it stayed its proceedings until the federal litigation is resolved. Our review of the prejudices and competing interests in this case favor upholding the stay. We therefore discharge the rule and remand the case to the water court.
Justice HOBBS dissents, and Justice KOURLIS joins in the dissent.

. We cite to the current statutes since none of these statutes have changed since the present action began in 2003. The claims are: 1) the United States failed to act as required by the NPS Act and Black Canyon Act because it did not protect the water related natural resources of the Black Canyon of the Gunnison National Park; 2) the United States' violated the NPS Act and Black Canyon Act when it relinquished and otherwise limited its reserved water right by relying upon an inadequate state-law in-stream flow right; 3) the United States violated NEPA by failing to carry out environmental analysis of the decision to rely on a state law in-stream flow right for protection of park resources; 4) the United States violated federal law prohibiting unauthorized dispossession of federal property when it relinquished much of its reserved water right for the Black Canyon; and 5) the United States unlawfully delegated authority under the NPS Act and Black Canyon Act when it gave authority and responsibility to the State of Colorado to protect the park's water rights and other resources.

. The McCarran Amendment was ultimately enacted into law as an amendment to an appropriations bill for the Departments of State, Justice, Commerce, and the Judiciary. However, the law had been introduced as S. 18 in 1951, and a prior version was introduced as S. 2304 in 1949. Legislative history on the amendment largely derives from senate hearings on S. 18. See Bennett W. Raley, Chaos in the Making: The Consequences of Failure to Integrate Federal Environmental Statutes with McCarran Amendment Water Adjudications, 41 Rocky Mtn. Min. L. Inst. 24-1, 24-22 (1995).

. Senator McCarran also made clear that these were the only purposes of the proposed amendment: "[S. 18] is not intended to be used for any other purpose than to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream." S.Rep. No. 82-755, at 9 (1951)..

. The government contended that the D.C. Circuit was without jurisdiction to consider the stay because it was not a final order. Dellinger, 442 F.2d at 789. The court concluded that the case was appealable not as of right, but by application for writ under the All Writs Act, 28 U.S.C. § 1651 (1964). 1d.

. The extent of disputed factual issues and judicial economy are not applicable in this case. The basic facts in this case are not in dispute. Judicial economy is also not relevant because when the state courts enter a final decree, the doctrine of res judicata bars the United States from claiming a broader reserved right, regardless of the federal court's resolution of the federal claims. Bell, 724 P.2d at 643. Therefore, the fact that some of the federal claims are necessarily intertwined with quantification of the reserved right is relevant to comity and the adequacy of relief in state court for the Environmental Oppo-sers, rather than relevant to the interests of judicial economy.